Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Phoenix, Michael Davidson, and Gregory Gibbs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Nubia Rodriguez,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a political subdivision of the State of Arizona; Michael Sullivan, in his Official Capacity as the City of Phoenix Chief of Police; Michael Davidson and Jane Doe Davidson, husband and wife; Gregory Gibbs and Jane Doe Gibbs, husband and wife; Maricopa County, a political subdivision of the State of Arizona; Rachel Mitchell, in her Official Capacity as Maricopa County Attorney,<br><br>Defendants. | NO. 2:23-cv-02232-DJH-MTM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Summary judgment should be granted in Defendants' favor because Plaintiff cannot meet her burden under Rule 56 to identify admissible evidence creating a genuine dispute of material fact on any claim. As set forth in Defendants' Motion and this Reply, Plaintiff's purported disputes largely misstate the record, rely on argument and improper expert opinion, and fail to controvert Defendants' properly supported facts as required. On the merits, Plaintiff's theories are foreclosed by controlling law and the undisputed procedural history: the initiation of charges stemmed from absolutely immune grand-jury testimony; there is no evidence that the Form 4 or any non-immune investigative act was material to a probable-cause determination; and independent prosecutorial discretion breaks any chain

of causation. Plaintiff further concedes dismissal of key federal theories by failing to address Defendants' arguments—including the absence of a separate constitutional violation and the applicability of qualified immunity—and she likewise offers no evidence to satisfy the elements of her state-law tort claims. With no triable issue for a jury, Defendants are entitled to judgment as a matter of law.

## I. LAW AND ARGUMENT

### A. Plaintiff's Response to Defendants' Statement of Facts is Not Complaint With the Rules.

Plaintiff largely does not dispute Defendants' facts. Most of the "disputes," are immaterial or improper and without citation to evidence that establishes an actual dispute. Local Rule of Civil Procedure 56.1 "does not permit explanation and argument supporting the party's position to be included in the…statement of facts," and requires arguments to be made in the response brief, "but within page limits." *Marceau v. Int'l Bhd. Of Elec. Workers*, 618 F.Supp. 2d 1127, 1141 (D. Ariz. 2009) (citing *Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009)). *See* LRCiv 7.2(m)(2) (objections must be stated summarily without argument). Often, Plaintiff's "disputes" contain improper legal arguments and conclusions, which are based upon impermissible characterizations of the facts or reliance on improper expert opinions. *See Cervantes-Anaya v. Britt*, 2024 U.S. Dist. LEXIS 160960 (D. Ariz. Sept 5, 2024) (noting that it was improper to offer additional legal arguments and conclusions in response to facts).

The problem is not merely stylistic. Plaintiff's "disputes" are repeatedly mischaracterizations of the record. For example, Plaintiff disputes DSOF4 by asserting that "Phoenix PD Operations Orders, on which all officers are trained, *require* officers investigating crashes to 'make maximum use of flares' for a protective barrier around a crash and required officers in the roadway to wear reflective vests. SOF2." But Plaintiff's own PSOF2 actually states only that the Operations Orders "*encouraged* officers investigating crashes to 'make maximum use of flares' or to set up barricades" and required reflective vests. Plaintiff does not identify any specific section of the Operations Order that converts the "encouraged" language into a mandatory "requirement" supporting her

asserted dispute with DSOF4. Recasting permissive language as mandatory is an improper conclusion, not a factual dispute supported by evidence. Nor is the traffic vest relevant to any of Plaintiff's claims.

Similarly, Plaintiff "disputes" DSOF9, 10, 11, and 15 (*see* PCSOF9-11, 15), but cites only to her own PSOF7–8—paragraphs that themselves are laden with argument, speculation, and conclusory characterizations. PSOF7 mischaracterizes the sequence of events. The record shows that Officer Rutherford stopped eastbound traffic by raising his left arm with his palm facing oncoming traffic to signal vehicles to stop, and then began crossing by entering the yellow two-way left-turn lane. PSOF8 adds further speculation and mischaracterization. Reliance on argumentative and speculative "facts" does not satisfy Plaintiff's obligation under LRCiv 56.1 to controvert a statement of fact with competent evidence.

Plaintiff also asserts "disputes" with witness statements where none exist. A party does not create a triable issue by disagreeing with what a witness said; the question is whether the witness made the statement and whether competent evidence contradicts it. For example, DSOF16 summarizes Ms. Barger's statement, and Plaintiff disputes it without articulating any evidentiary basis. Ms. Barger did state that she heard screeching tires, saw a vehicle "clipping along at a pretty good speed" in the left-turn lane, and then saw the officer fly "high" into the air. Plaintiff likewise disputes DSOF19 (witness Cynthia Peneyra) only by incorporating the issue-ridden PSOF7–8. That is not a record-based dispute; it is improper argument that does not controvert the cited evidence.

Plaintiff also "disputes" DSOF35 by asserting that she was not arrested and citing only to her own statement of facts regarding officers speaking with her on the day of the incident. But those cited facts do not contradict DSOF35; they do not establish that Plaintiff was arrested at any time. A response that cites unrelated interactions with officers that are not cognizable, rather than evidence of an arrest, is not an actual dispute of fact under Rule 56 and LRCiv 56.1.

The same pattern appears in Plaintiff's responses to DSOF40, 41, 43, and 46–48, where Plaintiff largely attempts to import speculative and immaterial argument about Berla and Gibbs rather than controverting Defendants' factual statements with admissible evidence. For example, Plaintiff invokes purported "warnings" by Berla, but the record reflects that Detective Dennison was told that the location and speed data in the Berla extraction derived from GPS and that he was unable to quantify its accuracy. DSOF47–53. Plaintiff's disagreement with the weight or significance of that information is not a factual dispute as framed in the DSOF, and it is not properly asserted through argumentative "disputes" in a statement of facts.

Additionally, Plaintiff "disputes" DSOF49 (the date the Form 4 was completed and submitted to the County Attorney's Office) only to argue that this was the sole occasion on which Davidson hand-delivered the case file to the Maricopa County Attorney's Office. That point is immaterial to DSOF49 and does not controvert the fact stated. Plaintiff similarly disputes or attempts to "clarify" other Form 4 facts (DSOF51–53) without offering competent evidence that contradicts the record citations supporting Defendants' statements. Under LRCiv 56.1, a response must identify a real dispute supported by admissible evidence—not additional narrative, advocacy, or irrelevant detail.

Nor is this problem confined to the examples above. Plaintiff's remaining purported "disputes" (DSOF57, 61–63, 65–67, 69–72, 74, 77, 91, 108, 114, 130, 136, 139, 145, 149, 151, 153–156, 158, 160, 162–167, 169–174) fare no better: they continue to substitute mischaracterizations, speculation, conclusory advocacy, and immaterial narrative for the specific, record-based citations LRCiv 56.1 requires to controvert a properly supported fact. As with the examples discussed above, Plaintiff's disagreements go to argument and inference—not to evidence establishing a genuine dispute of material fact.

**B. Response to Plaintiffs' Controverting Statement of Facts**

Defendants respond separately to each of Plaintiff's "controverting statement of facts." Many of the "facts" are citations to Plaintiff's expert opinions, yet expert testimony does not create any material disputes of fact and Defendant has separately moved to exclude

the opinions of accident reconstructionist Tuttle, who performed no accident reconstruction at all. *See* Docs. 131 & 139. Similarly, Plaintiff repeatedly cites to Judge Kreamer's ruling in the Preliminary Hearing, but Defendants were not in privity and the rulings cited by Plaintiff are immaterial to the issues this Court must decide. Plaintiff also continues to attempt to rely on Grand Jury testimony and Judge Ryan-Touhill's rulings related to the same when testimonial immunity clearly bars reliance on these facts. Defendants further respond as follows. CSOF 1- disputed. *See* accident reconstruction by William Neale summarizing all available evidence and video, Doc. 129, Exs. 32-33. CSOF 2- undisputed but unclear as to what Plaintiff claims this additional fact is material to. It is written as if it is disputing one of Defendants' facts, but it is not referenced in any of the responses to the facts. Expert Neale's report contains a chart documenting the speed of Plaintiff's vehicle once she entered the turn lane and sped up. *See* Doc. 129-2, at p. 75. CSOF3- disputed. Mr. Tuttle's report is improper and his opinions do not meet Rule 702 as set forth in Defendants' separately filed Motion to Exclude. *See* also Doc. 129-2, pp. 73-76, 80-83, 89-90, William Neale's report, discussing the reliability of Berla data. CSOF4, immaterial and irrelevant, Plaintiff was not arrested based upon a Form 4 and Plaintiff's own fact establishes that the prosecution would not even take a case unless all criminal disclosure was provided. CSOF5- admitted as to Davidson's testimony, disputed as to Gibbs' alleged inexperience with Berla and the Berla was corroborated by the independent video evidence. Immaterial as expert Neale's report establishes the reliability of the Berla data as confirmed by the independent video evidence. *See* Doc. 129-2, pp.73-76, 80-83, 89-90. CSOF6- argumentative, misstates plain language of the PowerPoint. CSOF7-undisputed, but immaterial to the point raised by Defendants. CSOF8- immaterial, as grand jury testimony is subject to immunity. All videos and evidence were turned over in criminal discovery. CSOF9-immaterial, as grand jury testimony is subject to immunity. CSOF10- immaterial as addressing evidentiary issues is appropriate for a witness, Plaintiff does not identify any pressure exerted or inaccurate information contained in the preliminary hearing testimony. CSOF11- undisputed, immaterial. CSOF12- undisputed, immaterial, supplants the Court's/jury's role in this case,

Defendants are not bound by the criminal court's findings as they were not in privity. The crux of the charges were based upon the impermissible use of the right-turn lane at speeds greater than prudent for the circumstances due to the first accident. CSOF13- undisputed as to Judge Kreamer's ruling, but disputed and immaterial as to the conclusions. Defendants are not bound by the criminal court findings as they are not in privity. Defendants' accident reconstructionist, William Neale, established the speeds before the braking, which were not 35-40 miles per hour. *See* Doc. 129-2, p. 90. CSOF14- undisputed as to Judge Kreamer's ruling, but disputed and immaterial as to the conclusions. Defendants are not bound by the criminal court findings as they are not in privity. Defendants' accident reconstructionist, William Neale, established the reliability of the Berla data. *See* Doc. 129-2, pp.73-76, 80-83, 89-90. The evidence in this case is not limited to what was presented by the prosecution at the preliminary hearing. CSOF15- undisputed to Judge Kreamer's ruling, but immaterial and disputed as to the conclusions. Much like Plaintiff claims that Davidson could not address Officer Rutherford's subjective state of mind in crossing the street, Judge Kramer could not address Plaintiff's subjective state of mind or what she saw at the time of the collision. CSOF16- undisputed as to Judge Kreamer's rulings, but disputed and immaterial as to the conclusions. Defendants dispute that a reasonable jury would conclude that Plaintiff did not grossly deviate from the standard of care when she used the two-way lane as a through lane travelling approximately 1100 feet at speeds unreasonable for traffic conditions. CSOF17- undisputed, but immaterial. CSOF18- disputed as the fact is incomplete and internally inconsistent with Plaintiff's other CSOF, where she admits that Gibbs did not draft the Form IV with Davidson (*see* CSOF19, DSOF 52). CSOF19- disputed. Gibbs did not testify at Grand Jury and Plaintiff fails to identify any claimed exculpatory points that he should have pressed. Plaintiff's reliance on Mr. Tuttle's report is improper and his opinions do not meet Rule 702 as set forth in Defendants' separately filed Motion to Exclude his Opinions. CSOF20-21- disputed. *See* accident reconstruction report of Wiliam Neale, Defendants' previously produced Exs. 32-33. Mr. Tuttle's report is improper and his opinions do not meet Rule 702. CSOF22- disputed and immaterial.

CSOF23-25- disputed and Plaintiff's expert Heston Slibert's opinions invade the province of the court and jury on ultimate issues, and are contrary to expert Neale and expert Noble's opinions. *See* Defendants' previously filed Exs. 28, 32-33. CSOF26- disputed and improperly relies upon Grand Jury Testimony. *See* Doc. 129-1 at pp. 18-29, Ex. 28, Noble report. CSOF28-30- disputed. Mr. Tuttle's report is improper and his opinions do not meet Rule 702. Defendant Neale's comprehensive accident reconstruction report, Ex. 32, established that Gibbs' reasonably and conservatively analyzed the accident and the Berla data was reliable. CSOF31- disputed. See Defendants' separately filed Rule 702 Motion to Exclude expert Tuttle. Mr. Tuttle did not perform an accident reconstruction and has no documented experience related to Berla.

### C. Testimonial Immunity Bars Plaintiff's Claims.

Plaintiff focused almost exclusively on immune Grand Jury testimony in her separately filed MSJ. (*See* Doc. 120, p. 6-7, 11, 12, 13, 16, 17). In her Response/Reply, she tries to move the bar to encompass other unidentified investigative acts, but in doing so misapprehends the import of testimonial immunity as it relates to the facts of her specific claim. Plaintiff argues that testimonial immunity does not apply because she seeks to hold Davidson and Gibbs responsible for statements and omissions included in the Form 4 probable cause statement. Yet, Gibbs had no involvement in drafting of the Form 4 and, critically, Plaintiff was never arrested and no judge ever relied upon the information in the Form 4 in assessing probable cause. *See Mead v. Turnage*, 2020 U.S. Dist LEXIS 219136 (D.Or. Nov. 20, 2020) (probable cause affidavit was not material where there was no evidence that the judge who arraigned plaintiff saw or considered the probable cause affidavit and the plaintiff was later indicted by grand jury). The initiation of her criminal charges was caused by the grand jury testimony and nothing else.

There is no dispute that Davidson hand-delivered all materials to the prosecution, provided additional information in a PowerPoint ("PPT"), and then nearly a year later the prosecution proceeded with the GJ to initiate the case. (DSOF49-53, 56-57, 64, 75). There is no evidence that the Form 4—a brief summary of the entirety of the investigation—

played any role in the prosecutor's charging decision or that the Form 4 had any independent evidentiary value. As Plaintiff admits, the prosecution proceeded in presenting a different charge (negligent homicide) verses Davidson's suggestion of manslaughter, which evidences the prosecution's rejection of the Form 4. There is no evidence that the grand jury testimony was limited only to the information appearing within the Form 4.

Plaintiff's Response spends significant time addressing out-of-court investigative functions that are allegedly outside of testimonial immunity, without identifying any deficient investigative functions that are at issue. This is not a case, for example, where there is any allegation of tampering with documentary or physical evidence, preventing witnesses from coming forward, coercing false confessions or fabricating witness identifications, giving hush money to witnesses, confidential informants with undisclosed bias, or manufacturing false tape-recorded interviews. *Cf. Lisker v. City of La*, 780 F.3d 1237, 1242 (9th Cir. Mar. 20, 2015). Plaintiff's criminal lawyer repeatedly admitted that all information was disclosed, provided to prosecutor, within the police reports he possessed, and he separately addressed his quarrels with the charges in his pleadings and *Basaurto* notice. (DSOF78-92). Plaintiff is now trying to create a fiction of incomplete investigative materials, while failing to acknowledge that the only reason that the case was remanded was because all information was available to her because it was within the investigative materials. There is no evidence that the prosecution failed to read all of the investigative materials provided by Defendant Davidson, as required by her ethical duties. Nor is there evidence that the prosecutor, thereafter, ignored Plaintiff's criminal lawyer's repeated filings and *Basurto* notice because she was pressured by the Defendants, or because they failed to provide her with the investigative materials that the defense was relying upon.

Plaintiff next argues that there is no testimonial immunity because the PPT—which was not shown during the Grand Jury— had "evidentiary value wholly apart from" the grand jury testimony, but does not explain what the value was, or what was allegedly deficient in the same. The PPT was not a piece of evidence, police report, a witness statement, or a video; it could not be admitted as evidence because it is hearsay. The PPT

merely summarized information that was already within the investigative materials, which the prosecution possessed in their entirety. Plaintiff also fails to acknowledge that the PPT addressed the differing witness evaluations of speed and that Officer Rutherford was not wearing a vest (a fact that is open and obvious from review of the videos), which contradicts her Form 4 incompleteness claim. In her improper argument in response to Defendants' SOF, Plaintiff incorrectly disputed DSOF62, without acknowledging that the PPT included the fact that Rutherford was not wearing a vest and included excerpts from the AZPOST Lesson Plan on Traffic Control relating to hand signals, and excerpts from PPD Operations Orders that require both hand signals and vests (Operations Order (3)(a) "Employees will wear a traffic vest and should wear a helmet when directing traffic."). *See* Doc 12-3, Plaintiff's Ex. 22, at pp. 153, 165-168. Plaintiff ignores the plain language of the PPT in favor of arguing a fiction that Davidson did not address the traffic vest. And, once again, this argument fails to confront Judge Kreamer's conclusion that whether, or not Officer Rutherford was wearing a traffic vest was irrelevant and not exculpatory.

### D. Plaintiff Concedes Dismissal of the Federal Malicious Prosecution Claim by Failing to Address Defendants' Arguments that State Law Provides an Adequate Remedy, there is No Separate Constitutional Claim and Qualified Immunity Applies.

Plaintiff has failed to address the argument that there is an adequate remedy existing under state law. To state a claim for malicious prosecution under federal law, Plaintiff must separately prove a constitutional violation (which cannot be due process). *Freeman v. City of Santa Ana*, 68 F..3d 1180, 1189 (9th Cir. 1995); *Hill v. Clovis Police Dep't*, 2011 U.S. Dist. LEXIS 133614, 2011 WL 5828224, at *4 (E.D. Cal. Nov. 18, 2011). Despite the fact that Plaintiff did not ever identify a separate viable constitutional violation, which Defendants raised in their filings, Plaintiff completely ignored her failures and Defendants' arguments pointing out the same. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 5 (9th Cir. 2005) (finding that Plaintiff abandoned two of her claims by not raising them in opposition to the defendant's motion for summary judgment); *Currie v. Maricopa Cnty. Cmty. Coll. Dist.*, 2008 U.S. Dist. LEXIS 48071, 2008 WL 2512841, at *2 n. 1 (D.Ariz. 2008) ("plaintiff does not respond to this argument, and her failure to do so serves as an

independent basis upon which to grant [the] motion[.]"); LR 7.2(i). Plaintiff has waived and/or abandoned any challenge to dismissal of this claim such that: (1) Plaintiff's Motion for Summary Judgment on this claim should be denied; and (2) summary judgment should be granted in Defendants' favor. Defendants also separately argued that qualified immunity barred this claim. Plaintiff did not address this argument either, thereby conceding dismissal and failing to meet her burden establishing that the law was clearly established. Plaintiff caused unnecessary briefing by taking the extraordinary step of affirmatively seeking to have summary judgment granted in her favor, without establishing that she could even meet the basic elements, instead of conceding that her claim lacked merit and agreeing to voluntary dismiss it. *See* 28 U.S.C. § 1927 (prohibiting litigation conduct that unreasonably expands the proceedings).

## E. The State Law Malicious Prosecution Claim Fails.

### *1. Defendants are Not Estopped From Litigating Probable Cause.*

Plaintiff's estoppel argument is meritless and contrary to the law. Plaintiff fails to identify a single case holding that police officers, who work for a city, are in privity with county prosecutors, in a preliminary hearing that is not a final determination on the merits. *See, for example, Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971). Plaintiff does not even address the required elements for collateral estoppel, res judicata, or issue preclusion, or analyze how they apply to this case. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that a party's argument was waived because "instead of making legal arguments," the party simply made a "bold assertion" with "little if any analysis to assist the court in evaluating its legal challenge."). It is undisputed that the Defendants had no control over the prosecution, no right to present evidence or cross-examine witnesses, no direct personal interest in the outcome, and that their motivations to defend against a civil case are wholly different than their roles as investigating officers in a civil case. *Zoellner v. City of Arcata*, 2022 U.S. Dist. LEXIS 167834, *4 (N.D.Cal. 2022) (finding that officer was not in privity with the prosecution and bound by no probable cause finding following a preliminary hearing and was not precluded from arguing probable

cause); *Duncan v. City of San Diego*, 401 F. Supp. 3d 1016, 1029 (S.D. Cal. 2019) ("federal courts applying state law have overwhelmingly concluded 'that privity does not exist between law enforcement officers and the criminal prosecution,'" and citing cases). Indeed, Gibbs did not even testify at the grand jury, was not involved in the PowerPoint discussions, and only testified at the Preliminary Hearing.

Without citation to any case law, Plaintiff claims that Davidson's interfacing with the prosecution leading up to the GJ (through the PPT presentation) and the preparation for the Preliminary Hearing establish privity, which is legally incorrect. These actions are typical run-of-the-mill contacts between the prosecution and investigating officers, which under the case law, do not transform into "privity." As is established through the prosecution's decision to charge negligent homicide, Davidson had no control over mandating the ultimate charges. Davidson did not choose what witnesses to present or what testimony to elicit from them, nor was he responsible for hiring any outside expert witnesses. As established by expert Neale's reconstruction, reliance on the Berla data in this case was reasonable, scientifically valid, and such evidence was corroborated by independent video sources. The prosecution's strategic decisions on evidence presentation cannot be used to bind the Defendants, who were not represented by the prosecution, and the prosecution was not proceeding to represent or protect any of their interests. Davidson and Gibbs did not choose to present the case for a second time via a Preliminary Hearing verses a Grand Jury presentation either.

Moreover, probable cause is a legal determination to be made by this Court, based upon all of the available evidence presented, not based solely upon what was presented to Judge Kreamer by the prosecution. Plaintiff cannot artificially reduce the available facts to only that which was before Judge Kreamer, particularly given the disagreements between Juge Ryan-Touhill and Judge Kreamer on the significance of the Berla data and whether or not its weight was to be addressed by a jury verses the court. Contrary to Judge Kreamer's ruling, Defendants have established that the Berla data is reliable and it is corroborated by other video evidence. *Trujillo v. Rio Arriba Cnty. ex. rel. Rio Arriba Cnty. Sheriff's*

*Department*, 319 F.R.D. 571 (D.N.M. Dec. 19, 2016) (allowing HGN test to be utilized to determine probable cause without meeting *Daubert*'s reliability standard). Whether or not Plaintiff's actions were reasonable, given the undisputed facts in the case, was for a criminal jury to decide. It was also for the jury to decide issues of fact, such as whether Plaintiff was intending to turn left, or whether the evidence showed otherwise: that she used the two-way turn lane as a through lane and manufactured this defense after she hit and killed Officer Rutherford. There is no dispute that she could not have safely turned left while traveling at 50 miles per hour, that no other vehicle (including the 38 vehicles she passed) was driving at anywhere near the speed she was driving, and that the slower traffic set the standard for what was reasonable under the circumstances.

***2. The Prosecution Was Independent.***

Plaintiff argues that Defendants were "instrumental" in the initiation of the prosecution of Plaintiff without citing to any facts establishing this to be the case. Plaintiff similarly claims that there is an "issue of fact," without identifying any claimed fact in dispute; Plaintiff has only presented attorney argument masquerading as fact. Plaintiff also lumps Gibbs and Davidson together, even though Gibbs never interfaced with the prosecutor and did not testify at the GJ. His role was limited to writing an accident reconstruction report which, standing alone, hardly can be considered instrumental to the prosecution and Plaintiff cites to no case law citing this novel claim. Plaintiff criticizes Gibbs' accident reconstruction by reference to expert Tuttle's opinions, but Tuttle's opinions violate Rule 702 and he did not even do his own accident reconstruction. Expert Neale's opinions—based upon numerous sources of undisputed objective evidence—establish that Gibbs' accident reconstruction was reliable and conservative. (DSOF124-160).

As for Davidson, Plaintiff cites to the fact that he "argued" with the prosecutor over charges in the months before the prosecution settled on how the case would be charged. Yet, this "argument" was based upon an improper charge that required that Officer Rutherford be in a crosswalk as a pedestrian and he clearly was not. There is nothing

improper with Detective Davidson identifying errors in the prosecution's analysis. Plaintiff concedes that the prosecution considered the charging for months, holding a roundtable, selecting a different prosecutor and then returning to the first, and then ultimately proceeding with a charge wholly different from the one suggested by Detective Davidson. Curiously, Plaintiff does not cite to any testimony or evidence from the prosecutor herself establishing that she did not independently review all of the evidence, or that she was influenced by Detective Davidson in any way.

Plaintiff's arguments repeatedly misrepresent the contents of Davidson's PPT and fail to acknowledge her criminal lawyer's repeated filings admitting that all evidence was produced to her in Rule 15 disclosures. Plaintiff's criminal lawyer argued that all evidence was **known** because it was plainly within the produced police reports: "[u]under what circumstances, would either of them be unaware, of these facts? It would mean that both of them had not reviewed the relevant police reports nor read the crash analysis of their own expert which this prosecution was based." (DSOF78-92). There is no evidence that the prosecution did not read these materials at the time of the GJ, when investigating and responding to Plaintiff's criminal lawyer's motions, or when continuing to prosecute the case at the Preliminary Hearing. Prosecutorial discretion is clearly established through the prosecutor's knowing and informed decision to proceed forward with the Preliminary Hearing after reviewing Judge Ryan-Touhill's remand ruling. Despite knowing all of the alleged "warts," the prosecution still continued on.

### ***3. The Case Did Not Terminate in Plaintiff's Favor.***

"The ultimate legal decision with respect to what constitutes a favorable termination rests with the judge." *See Frey v. Stoneman*, 150 Ariz. 106,111, 722 P.2d 274, 279 (Ariz. 1986); *Lane v. Terry H. Pillinger, P.C.*, 198 Ariz. 152, 156, 939 P.2d 430, 434 (App. 1997) (the existence of a favorable termination is a question of law). Judge Kreamer's ruling in the preliminary hearing was based solely on the evidence presented to him at that time as chosen by the prosecution. Had the ruling reflected or intended to reflect innocence or resolved the merits, it would have been made with prejudice. *Cf. Rolph v. City Court of*

*Mesa*, 127 Ariz. 155, 158, 6`8 P.2d 1081, 1084 (1980) (stating that the dismissal of an indictment generally does not involve a determination of the defendant's guilt or innocence for purposes of double jeopardy).

If Judge Kreamer believed that Plaintiff was innocent, it would have been contrary to the interests of justice to dismiss without prejudice. There was no fact that established innocence: it is undisputed that Plaintiff was driving, in the center turn-lane for an extended period, and hit and killed Officer Rutherford. Respectfully, Defendants believe that Judge Kreamer's ruling impermissibly supplanted what a criminal jury should have determined: was Plaintiff criminally reckless in how she drove her vehicle given the traffic conditions existing at the time. Plaintiff does not cite a single case addressing what constitutes a finding akin to "innocence" under Arizona law in the context of a dismissal that is without prejudice and involves a case where the determination of criminal culpability should be a jury question.

***4. Defendants had Probable Cause to Submit Charges.***

Malice requires a showing that defendants used the prosecution for "a primary purpose other than that of bringing an offender to justice." *Lantay v. McLean*, 2 Ariz. App. 22, 406 P.2d 224, 225 (Ariz. Ct. App. 1965). Defendants did not prosecute Plaintiff, MCAO did, but Defendants did have probable cause to submit charges. There is no evidence of any purpose other than bringing Plaintiff to justice. Plaintiff's entire argument is based upon Judge Kreamer's conclusion, which is irrelevant to this Court's independent determination of probable cause based upon the record before it. Once again, this is not a case where the identity of the assailant is in dispute. Plaintiff hit and killed Officer Rutherford. The question is whether her conduct, in operating her vehicle was criminally negligent. Given the facts in this case, whether or not Plaintiff's conduct was criminally negligent should have been determined by a jury. The facts of this accident are not disputed, whether Plaintiff's conduct was not reasonable is. Defendants submit that probable cause to believe that a driver is criminally negligent exists when the driver: changes lanes to avoid a traffic slow down due to another collision; moves into the turn lane and accelerates to a speed

grossly excessive for making a left turn; passes almost 40 vehicles who are driving slowly, reasonably, and represent the reasonable standard of care; and as a result of the choice to use the two-way-turn lane in a manner unanticipated to a police officer crossing the road, causes a vehicle pedestrian collision. When Officer Rutherford stepped into the two-way turn lane, he had no reason to anticipate that he would need to stop traffic within that turn lane because someone would be using it in a manner that was unreasonable and unintended. If another driver had entered the turn lane, they similarly would have no reason to believe that Plaintiff would be exceeding the speed limit within it for 1100 feet.

***5. There is No Evidence of Malice***

The desire for a criminal jury to resolve whether or not Plaintiff acted criminally is not equivalent to malice. The criminal process is specifically designed for a jury to decide these types of issues that are disputed. Plaintiff claims that there were "unusual steps" to obtain the prosecution, but identifies no "unusual" steps that are malicious. Detective Davidson's hand-delivery of Rule 15 materials is not malicious and construing it as such would discourage the complete and expedient turning of materials over to the prosecution. There is no allegation that Davidson left out any materials and Plaintiff's criminal lawyer admitted that he was able to pursue the remand based upon information that was included in these very materials. The very purpose of hand-delivery is to ensure that information is not lost and that it is accessible in one place for the prosecution to consider as a whole.

Moreover, that Davidson prepared a PPT presentation—pointing out that Officer Rutherford was not wearing a vest in violation of PPD policy—does not support malice either. This was a high-profile case and Davidson was requested to address it at a round table of multiple prosecutors as requested by MCAO. Plaintiff does not explain how Davidson's participation in this round table process, ensuring multiple different viewpoints, is malicious either. This type of process ensures guards against a myopic or biased view of the case. There is no evidence that Davidson, on his own, decided to pursue this course. MCAO's decision to roundtable the case should be lauded because having the input of more

people, rather than a single prosecutor, is beneficial to the defense. Detective Davidson had no obligation to present a full trial on the merits through his PPT presentation.

Likewise, the step of having two separate accident reconstructions is of benefit to the defense and does not show malice. Multiple reconstructions can expose gaps in analysis, or even create reasonable doubt for the defense. Or, it can solidify the analysis. Plaintiff's argument ironically seems to be that Defendants should have done less, not more. Reliance on Berla data, corroborated by video evidence, is not malice either. Plaintiff has not pointed to a single peer-reviewed paper, District or Circuit Court opinion addressing the scientific and technological underpinnings of the data, or that has otherwise held Berla data cannot be relied upon or is inadmissible. At most, Plaintiff points to what she would claim to be a battle of experts—between William Neale and Ed Tuttle. Yet, comparing the expert reports, there is no question that expert Neale's analysis is based upon recognized methodology, cites to scientific sources related to and establishing Berla reliability, and independently verified the Berla data through use of other evidence. In contrast, Mr. Tuttle's report offers no scientific sources, no analysis, and outlines no qualifications to address Berla.

**F. The Intentional Infliction of Emotional Distress Claim Fails**

Plaintiff's Response only underscores why her IIED claim cannot survive summary judgment. She offers no evidence establishing any required element and instead relies on speculation, disagreement with lawful investigative conduct, and theories Arizona courts have repeatedly rejected.

***1. Defendant's Conduct Was Not Extreme or Outrageous***

Plaintiff's IIED claim fails at the threshold because she cannot identify conduct that approaches the "extreme and outrageous" standard required under Arizona law. The mere existence or duration of a criminal investigation and prosecution—even a lengthy one—does not plausibly "exceed all bounds of decency." Plaintiff cites no evidence that Defendants dictated, delayed, or controlled charging decisions, the grand jury presentation, post-remand proceedings, or dismissal. Those decisions rested solely with the Maricopa County Attorney's Office and the court and were undoubtedly impacted by COVID-19.

Plaintiff's repeated assertion that Defendants "subjected" her to a multi-year prosecution improperly collapses the distinction between investigation and prosecution. Plaintiff cites no Arizona case to support her claim that IIED liability may be imposed on investigating officers for the independent decisions of prosecutors. Nor does Plaintiff cite any authority recognizing IIED liability based on prosecutorial delay—particularly where multiple independent decision-makers intervened. Absent conduct that "completely violate[s] human dignity," her claim fails as a matter of law. *See Udd v. City of Phoenix*, 2018 U.S. Dist. LEXIS 215872, * 27.

***2. Plaintiff Impermissibly Relies on Immune and Irrelevant Conduct***

Plaintiff's assertion that her IIED claim is "not an effort to avoid testimonial immunity" is unpersuasive, particularly because, in the very same paragraph, she alleges that "Davidson's omissions and misrepresentations continued throughout his grand jury testimony." That allegation squarely rests on conduct that is absolutely immune. Grand jury testimony is fully protected, and Plaintiff may not rely on it—directly or indirectly—as the factual predicate for an IIED claim. Immunity applies regardless of whether the testimony was prepared in advance or "cleared" with a prosecutor.

Plaintiff's reliance on the Form 4 and charging-related communications with prosecutors fares no better. Those materials reflect routine investigative activity and prosecutorial consultation, not conduct that could plausibly be characterized as extreme or outrageous. Moreover, law enforcement officers do not control charging decisions, and their participation in investigative summaries or discussions with prosecutors does not give rise to liability for how a prosecution proceeds. Plaintiff's disagreement with the charging outcome or the prosecutor's exercise of discretion cannot transform lawful investigative conduct into a tort.

***3. Plaintiff Offers No Evidence of Omissions or Misrepresentations***

Plaintiff asserts that Defendants omitted "crucial details" from "their reports," yet she fails to identify a single material fact that was false, fabricated, or improperly excluded from the police reports. Mere disagreement with investigative conclusions, weighing of

evidence, or interpretation of the evidence does not constitute an actionable omission. Plaintiff's Response does nothing more than repackage the same conclusory allegations already addressed and rejected in Defendants' motion and fails to raise any genuine dispute of material fact.

***4. Plaintiff Cannot Establish Causation***

Plaintiff also cannot establish causation—a required element of IIED—because her alleged damages are attributable to independent decisions by third parties, not to any conduct by Defendants. Each category of claimed harm fails for the same fundamental reason: speculation cannot substitute for evidence of causation.

First, Plaintiff's employment-related allegations are wholly speculative. She claims to be placed on leave on the day of the accident because Davidson met with her employer but does not indicate what was said or whether any employment action was taken for reasons unrelated to Defendants. Additionally, Plaintiff admits that she ultimately resigned for personal reasons. Where independent actors exercise their own judgment, conjecture about possible influence is insufficient as a matter of law to establish causation.

Second, Plaintiff's claim concerning the removal of her foster daughter fails for the same reason. She presents no evidence linking that decision to Defendants' conduct, as opposed to the independent determinations of child-welfare authorities applying their own statutory standards. The mere existence of a criminal prosecution—without evidence of improper influence—cannot establish causation, and Plaintiff's emotional response to that outcome does not convert those consequences into actionable IIED damages.

Third, Plaintiff's allegations of financial strain and emotional distress similarly fall short. The stress attendant to defending against criminal charges, while undeniably difficult, reflects the ordinary burdens of the criminal process. Absent extreme and outrageous conduct by Defendants, such generalized harms cannot satisfy IIED's demanding causation requirement.

***5. Fails to Show Severe Emotional Distress***

Even assuming some emotional distress, Plaintiff does not meet Arizona's demanding standard for severity. The record reflects anxiety, financial strain, and fear of incarceration—experiences that are insufficient as a matter of law to constitute "severe" emotional distress for IIED purposes. Plaintiff offers no evidence that her distress was so extreme that no reasonable person could be expected to endure it, nor does she link any treatment to conduct uniquely attributable to Defendants.

***6. Plaintiff's Timeliness Argument Misstates the Law***

Plaintiff's accrual argument is legally incorrect. Under Arizona law, a claim accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). Accrual does not hinge on the dismissal of a criminal prosecution. Furthermore, "[a] plaintiff need not know *all* the facts underlying a cause of action to trigger accrual. But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Thompson v. Pima County*, 226 Ariz. 42, 46, ¶ 12, 243 P.3d 1024 (App. 2010) (citations omitted). Accordingly, "[t]he relevant inquiry is when did a plaintiff's 'knowledge, understanding, and acceptance in the aggregate provide [] sufficient facts to constitute a cause of action.'" *Id.*

Here, Plaintiff repeatedly asserted during the criminal proceedings that she had done nothing wrong and that Defendants' actions were unjustified. By her own allegations, she believed she was harmed from the outset of the investigation. Plaintiff's theory—that an IIED claim based on the investigation cannot accrue absent dismissal of the criminal case—would improperly toll claims indefinitely based solely on the duration of criminal proceedings. That simply cannot be the case.

**G. Plaintiff's Fourteenth Amendment Due Process Claim Fails.**

Defendants outlined the litany of problems with this claim, which Plaintiff failed to confront in her Response/Reply. Prior to briefing, Defendants requested that Plaintiff

voluntarily dismiss this claim and she refused. She now completely ignores the case law cited by Defendants, argues propositions that are contrary to the law and, even at this stage, the underpinnings of her claim remain clear as mud. This meritless claim lacks any good faith basis and ignoring applicable case law is not akin to constituting a good faith basis for change, modification, or extension of the law. *See* 28 U.S.C. § 1927. There are no undisputed facts that preclude summary judgment on this claim: Plaintiff was not arrested, incarcerated, and she never went to trial.

### *1. There is No Viable* **Brady** *Claim When There is No Criminal Trial.*

Plaintiff cites to *United State v. Davenport*, 753 P.2d 1460, 1462 (9th Cir. 1985), for the proposition that *Brady* disclosure must be made at a time when the disclosure is of value to the accused. Thus, seemingly, Plaintiff is trying to make a *Brady* claim, but the case law prohibits her from doing so where there was never any criminal trial. Plaintiff then cites to *Tennison v. City and Cty. of San Francisco*, 50 F.3d 1078 (9th Cir. 2009), but *Tennison* is a *Brady* case involving a criminal trial, which was addressed in Defendants' MSJ/Response. *See also* Ninth Cir. Model Jury Instruction 9.33A; *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991) ("*Brady* does not necessarily require that the prosecution turn over exculpatory material before trial."); *Taylor v. Waters*, 81 F.3d 429, 436 n. 5 (4th Cir. 1996) (no *Brady* claim where plaintiff did not suffer a criminal trial); *United States v. Douglas*, 525 F.3d 225, 245 (2nd Cir. 2008) ("*Brady* requires disclosure 'in time for its effective use at trial…"); *United States v. Mitchell*, 777 F.2d 248, 255 (5th Cir. 1985) ("Although the government provided a large amount of…*Brady* materials the day before trial, and other such materials during trial, there has been no showing the defendants failed to receive the materials in time to effectively cross-examine witnesses.").

Even if there could be a *Brady* claim where there is no criminal trial—which no Ninth Circuit or Supreme Court Opinion has held—she cannot prove any of the elements of a *Brady* claim. It is undisputed and admitted by Plaintiff's criminal lawyer that all material was turned over to Plaintiff as part of the Rule 15 disclosure. Thus, *Brady* was met because Plaintiff possessed all relevant information. Next, Plaintiff never suffered any

deprivation of liberty because she was not arrested nor incarcerated pending trial, or after it. And, she cannot establish the materiality element of *Brady* because there was no trial. *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) ("A plaintiff cannot establish materiality unless the case goes to trial and the suppression of exculpatory evidence affects the outcome."). Because Plaintiff does not address any of these numerous failings that require dismissal, she has waived challenge and concedes that such claims should be dismissed.

***1. There is No Suppression Claim Because Plaintiff Was Not Incarcerated.***

As with the *Brady* claim, Plaintiff fails to address the case law barring a suppression due process claim where the Plaintiff was not arrested or detained pending her criminal trial. *Klingensmith v. Town of Gilbert*, 2025 U.S.Dist. Lexis 151837, *7-8 (D. Ariz. Aug 7, 2025). Once again, by failing to address this authority, she has waived any challenge to the dismissal on this claim on this basis.

***2. Plaintiff's Untimely And Legally Unsupported "Investigation" Claim Fails.***

To support her due process claim, Plaintiff cites to a non-binding district court decision, *Samuelson v. Jewell Sch. Dist. 8*, 725 F.Supp. 3d 1195 (D.Or. March 26, 2024). But, *Samuelson* did not address the withholding of material or exculpatory evidence, which are *Brady* or suppression claims, which are barred by the case law above. Thus, by citing to *Samuelson,* Plaintiff appears to be attempting to create an entirely new "reckless investigation claim," which was never pled in the Amended Complaint and cannot be raised for the first time in her Reply/Response to Defendants' MSJ. In her own MSJ, Plaintiff never claimed that her due process claim was based upon "reckless investigation." Instead, she raises *Samuelson* for the first time in her Reply/Response after Defendants pointed out that the case law bars this claim. *Samuelson* is contrary to *Richards v. Cnty. of San Bernadino*, 2022 U.S. App. LEXIS 17535 (9th Cir. June 24, 2022), is not controlling law, and should be rejected. In *Richardson*, the court ruled that a claim for:

> '[R]eckless' investigation is not cognizable under § 1983. *See Devereaux*, 263 F.3d at 1075 ("[T]here is no constitutional due process right to have…[an] investigation carried out in a particular way."); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curium) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil

rights claim unless there was another recognized constitutional right involved.")

*Id*. at *5-6. Even if such a claim existed, which is disputed, the evidence does not support it. Defendants collected all information in the investigation. Plaintiff's dispute is not that they should have done more, but that their conclusion of her criminal responsibility should have been different, which is not bad faith, nor is it reckless. *See, for example, Arizona v. Youngblood*, 488 U.S. 51, 57, 102 L.Ed. 2d 281 (1988) (an officer's failure to preserve or collect potential exculpatory evidence does not violate the due process clause unless the officer acted in bad faith, which turns on knowledge of the exculpatory value at the time the evidence was lost or destroyed).

### ***3. Defendants are Entitled to Qualified Immunity on the Due Process Claim.***

Plaintiff has not identified any case law clearly establishing the law related to her due process claim. As argued above, Plaintiff failed to confront the fact that her *Brady* and suppression claims fail because she fails to establish the elements. None of the cases that Plaintiff cites allowed a substantive due process claim to proceed where there was no liberty interest impacted. Plaintiff was not arrested, incarcerated, or even tried. And, it is undisputed that all material was turned over to Plaintiff's lawyer, as he admitted in a multitude of criminal filings. Plaintiff's criminal lawyer used this evidence to file a Motion for Remand and to cross-examine the witnesses at the Preliminary Hearing. Despite Plaintiff's attempt to make inflammatory allegations against the Defendants, the undisputed facts undermine Plaintiff's claims.

The majority of the cases that Plaintiff cites to are distinguishable on their face as they address claims made under different constitutional amendments:

- *Beck v. City of Upland*, 527 F.3d 853, 862063 (9th Cir. 2008), addressed a First Amendment retaliatory arrest/prosecution claim. The court never addressed the contours of a substantive due process claim where the suspect had never been arrested.
- *Barlow v. Ground*, 943 F.2d 1132, 1136037 (9th Cir. 1991), addressed a Fourth Amendment arrest of a man, allegedly for his sexual orientation, where he then bit officers and his blood was drawn without consent or a warrant to test for AIDS. No substantive due process claim was addressed.

- *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988), addressed a Fourth Amendment claim for false arrest and the availability of attorney fees. As an element to obtaining attorney fees for defense in the criminal case, the plaintiff was required to rebut the presumption that the prosecutor exercised independent judgment by establishing material omissions or false evidence. There was no due process claim pled. The legal test for the availability of attorney fees for the successful defense of a Fourth Amendment claim provides no notice of the law relative to a different constitutional amendment. In addition, Borunda involved incomplete information that only came from the police reports, the reports contained glaring omissions, the officers gave contradictory statements about the incident in court, and the witnesses wholly confirmed the plaintiff's version of the arrest. Here, in contrast, Plaintiff's criminal lawyer conceded that all information that he relied upon to challenge the Grand Jury came from the police reports. It is undisputed that there is nothing outside the documents that Plaintiff possessed that was allegedly withheld.
- *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), was a criminal case involving a conspiracy to possess with intent to distribute a controlled substance. The decision addressed probable cause as determined by the four corners of a search warrant. Here, no search warrant is at issue.
- *Blakenhorn v. City of Orange*, 485 F.3d 463, 482-83 (9th Cir. 2007), is a Fourth Amendment excessive force and unlawful arrest claim, where the suspect was arrested on a trespass and officers gang tackled him while he was compliant. The Plaintiff spent three months in jail. There was no substantive due process claim.
- *Franklin v. Mally*, 2019 WL 2548687 ,*7 (N.D. Cal. June 20, 2019), is non-binding district court case from outside of Arizona. The Plaintiff alleged excessive force and unlawful seizure related to a traffic stop. There was no substantive due process claim.

None of the above cases clearly establishes the law in the context of a substantive due process claim. Moreover, as discussed above, Plaintiff cannot use *Samuelson* to clearly establish the law because it is a non-binding district court case from Oregon post-dating this incident from 2024. In its analysis, *Samuelson* cited to other non-binding district court cases also post-dating this incident from 2021-2022, and its holding is contrary to *Richards* and *Devereaux*, and *Gomez. Samuelson's* holding also explicitly acknowledges that the Ninth Circuit has never recognized a "reckless investigation" claim. Thus, if the theory is "reckless investigation," there was no clearly established law in 2019-2020, nor is there even any clearly established law now that supports this theory.

Finally, Plaintiff's police procedures experts' opinions have no relevance to whether the law is clearly established. Defendant has separately moved to exclude the opinions of expert Tuttle. Expert Silbert also impermissibly relies upon Grand Jury testimony, opines on ultimate issues without methodology, and is not a lawyer (despite his citation to court rulings). There is not a single disputed fact that makes it impossible for this Court to assess

the status of the law in this area, which relies upon simple facts to determine that a claim has not been stated: there was no arrest, there was no incarceration, there was no criminal trial.

## II. CONCLUSION

For these reasons, and based on the undisputed record, Defendants respectfully request that the Court grant their Motion for Summary Judgment in full and enter judgment in Defendants' favor on all claims.

DATED this 13th day of April 2026.

WIENEKE LAW GROUP, PLC

By: */s/ Christina Retts*
Kathleen L. Wieneke
Christina Retts
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants City of Phoenix, Michael Davidson, and Gregory Gibbs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Larry J. Wulkan
Benjamin L. Rundall
ZWILLINGER WULKAN PLC
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004
*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

By: *<u>/s/ Lauren Rasmussen</u>*